**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANNA CHRONIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19 C 6909** |
| | ) | |
| **UNITED STATES OF AMERICA,[1]** | ) | |
| **CENTERS FOR MEDICARE AND** | ) | |
| **MEDICAID, and DEPARTMENT OF** | ) | |
| **HEALTH AND HUMAN SERVICES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

On October 21, 2019, Anna Chronis filed the present lawsuit under the Federal

Tort Claims Act (FTCA). She alleges medical negligence by Dr. Tamika Alexander,

"willful misconduct/willful negligence" by Dr. Alexander and staff of the Department of

Health & Human Services, and violation of due process by the Department of Health &

Human Services and the Centers for Medicare and Medicaid Services for their alleged

mishandling of her written complaints. This is Ms. Chronis's second lawsuit involving

her treatment by Dr. Alexander. She filed the first suit in June 2017, and it was later

dismissed for failure to present an administrative claim as required by the FTCA. Ms.

Chronis then made an administrative claim, and she has now filed a second suit. The

defendants have moved for summary judgment, asking the Court to dismiss the case on

---

[1] The United States has been substituted for Tamika Alexander, M.R. and UIH-Mile Square Health Center pursuant to 42 U.S.C. § 233.

the grounds that it is time-barred and her due process claim fails.  For the reasons stated below, the Court grants defendants' motion.

### Factual and procedural background

On June 8, 2015, Ms. Chronis went to the University of Illinois Mile Square Health Center, where she got a pap smear administered by Dr. Tamika Alexander.  Mile Square is a private entity that receives Public Health Service grant money under 42 U.S.C. § 233.  Ms. Chronis alleges that Dr. Alexander did not comply with proper standards of care treating her and that, as a result, she suffered a vulvar contusion that required follow-up treatment from another medical provider.  Ms. Chronis states that she attempted to contact Dr. Alexander multiple times to complain about her injury and get the results of the original pap smear.  After receiving no response, she reached out to the Department of Health & Human Services' (HHS) grievance department.  On August 25, 2015, Ms. Chronis wrote to HHS and voiced her concerns and complaints. She included a complaint about HHS's delay in mailing an invoice and its failure to timely close out her bill, and she requested reimbursement of $332 in "direct costs" that she said she had incurred as a result of Dr. Alexander's allegedly substandard treatment. Ms. Chronis wrote another letter to HHS on September 24, 2015, listing additional complaints—this time about how HHS handled her original grievances.

Mile High's medical director, Dr. Mark Potter, wrote to Ms. Chronis on November 3, 2017, extending "personal apologies" for her grievances.  He declined the requested $332 reimbursement but advised Ms. Chronis that her costs should be covered by the Illinois Department of Healthcare and Family Services and attached instructions on how to reach the Department.  On November 7, 2015, Ms. Chronis wrote to the Centers for

Medicare and Medicaid Services (CMS) complaining of her dissatisfaction with Mile High's handling of her grievances. She also responded to Dr. Potter on November 27, 2015, expressing her discontent with his response. CMS responded to Ms. Chronis via letter and email, stating that she could file a formal complaint against Dr. Alexander with the Illinois Department of Financial and Professional Responsibility and that she could contact the State of Illinois Medicaid office for reimbursement of her out-of-pocket costs due to the alleged provider negligence.

In June 2017, Ms. Chronis filed a *pro se* lawsuit in state court alleging medical malpractice against Dr. Alexander and HHS. The United States removed the suit to federal court and was substituted as the sole defendant under 42 U.S.C. § 233. It then moved to dismiss Mr. Chronis's suit for failure to exhaust administrative remedies because she had not presented a demand to the Department of Health and Human Services (HHS) before filing suit. Another judge of this court granted the motion in September 2017.

Ms. Chronis appealed, and the Seventh Circuit appointed an attorney to represent her. Ms. Chronis fired the appointed attorney and proceeded *pro se*, with the Seventh Circuit appointing another attorney to serve as *amicus curiae*. On July 29, 2019, the Seventh Circuit affirmed the dismissal of Ms. Chronis's suit, holding that she had not exhausted her administrative remedies because the document she cited, a letter she sent to CMS on November 7, 2015, did not satisfy the requirement to present a "demand for a sum certain" to the appropriate federal agency before filing suit. The court held that the letter could not fairly be read as a demand for money damages and that CMS was not required to search for an actual claim in the letter, most of which

focused on Ms. Chronis's dissatisfaction with HHS.  Furthermore, the court noted, the letter made a request for "guidance on how to proceed," not a demand for money.  *See generally Chronis v. United States*, 932 F.3d 544 (7th Cir. 2019).

Before the previous district judge dismissed her first suit, the government's attorney gave Ms. Chronis clear instructions on how to properly file an administrative claim with HHS.  Specifically, on August 11, 2017, the day that the government filed its motion to dismiss, its attorney e-mailed Ms. Chronis such instructions, including information on where to send a claim.  Ms. Chronis timely submitted a timely administrative claim to HHS on October 30, 2018.  On May 30, 2018, the government filed a document in the Seventh Circuit stating that it would not move to dismiss Ms. Chronis' appeal as moot but that she was free to pursue her claim in a new lawsuit given her timely filing of the administrative claim.  In the same document, the government cautioned Ms. Chronis that she would have only six months from the date of any denial of her administrative claim to file a new lawsuit—otherwise she risked dismissal of her case with prejudice.

On October 31, 2018, HHS mailed a letter to Ms. Chronis denying her administrative tort claim.  The denial included instructions on what to do next, including filing a lawsuit against the United States or filing a written request for reconsideration within six months from the date of mailing of the denial.  The last day for Ms. Chronis to timely file a lawsuit or a request for reconsideration would have been April 30, 2019.  On April 23, 2019, one week before the expiration of the six-month period, the government's attorney counsel emailed Ms. Chronis to remind her of the upcoming deadline.  That same day, Ms. Chronis responded to the government's email, stating

4

that there was no need to "refile the case" unless she lost her appeal, in which case she believed she would have thirty days to file a new lawsuit. The government's attorney advised Ms. Chronis in response that she would have to file a new case within the quickly approaching deadline to satisfy the statute of limitations. The government's counsel also reiterated that Ms. Chronis would be well-advised to consult an attorney on that point.

On April 30, 2019—the last day to timely file a request for reconsideration or a new lawsuit—Ms. Chronis mailed a request for reconsideration to HHS by certified mail. HHS did not receive the request until May 6, 2019. On August 7, 2019, HHS sent a letter to Ms. Chronis denying her request for reconsideration based on that fact that the agency did not receive her request within six months of the mailing of the original denial, which was October 31, 2018.

On October 21, 2019, Ms. Chronis filed the present lawsuit, alleging medical negligence on part of Dr. Alexander and "willful misconduct/willful negligence" on part of Dr. Alexander and other HHS staff, and violation of due process on part of HHS and CMS for their alleged mishandling of her grievances.

## Discussion

The government has moved for summary judgment, arguing that Ms. Chronis's lawsuit is time-barred because she did not file it within the required six months of the denial of her original administrative tort claim and did not file a timely request for reconsideration with HHS. The government also contends that Ms. Chronis's due process claim cannot be brought under the FTCA. Summary judgment is appropriate where, after viewing the evidence in the light most favorable to the nonmoving party,

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *United States v. Luce*, 873 F.3d 999, 1005 (7th Cir. 2017).

## 1.  Statute of limitations

The government argues that although Ms. Chronis made a timely administrative claim, she did not file this lawsuit in a timely fashion. Specifically, the government contends, Ms. Chronis filed the lawsuit nearly twelve months after HHS mailed her the denial of her administrative claim. The government further contends that Ms. Chronis's request for reconsideration did not prevent the limitations clock from running out on April 30, because HHS did not receive the request by that date. Ms. Chronis contends that her request for reconsideration was timely because she mailed it within six months after HHS's denial of her claim, even if HHS did not receive the request until after that. She invokes the so-called "mailbox rule" commonly applied in the context of lawsuits by *pro se* prisoners.

Under the FTCA, a tort claim against the United States is barred "unless it is presented to the appropriate Federal agency" within two years of the accrual of the claim and "unless action is begun within six months after the date of mailing [ ] of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(a). The Code of Federal Regulations makes it clear that a claim is considered to have been "presented" to a government agency when it "*receives from a claimant* [ ] an executed Standard Form 95 or other written notification of an incident [ ]." 28 C.F.R. § 14.2(a) (emphasis added). In other words, the governing regulation makes it clear that a tort claim against the United States is considered to have been "presented" when the

6

federal agency receives it from the claimant, not when the claimant mails it. Ms. Chronis cites statutes or regulations governing the filing of tax returns as well as materials with the Social Security Administration, but those involve different language from section 14.2(a), which is crystal clear on this point.

As indicated earlier, Ms. Chronis relies on the so-called "mailbox rule," under which a lawsuit or administrative tort claim by a prisoner is considered to have been filed or presented when the prisoner placed it in the prison mail system. *See Houston v. Lack*, 487 U.S. 266 (1988); *Censke v. United States*, 947 F.3d 488, 492 (7th Cir. 2019) (applying the mailbox rule to FTCA administrative claims by prisoners). The rationale of these cases does not apply to Ms. Chronis. In *Houston*, the Court explained the basis for the rule by explaining that *pro se* prisoners lack any control over how they file materials with courts. Specifically, prisoners

> cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before [the] deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately

7

> get stamped "filed" on time. And if there is a delay the prisoner suspects
> is attributable to the prison authorities, he is unlikely to have any means of
> proving it, for his confinement prevents him from monitoring the process
> sufficiently to distinguish delay on the part of prison authorities from slow
> mail service or the court clerk's failure to stamp the notice on the date
> received. Unskilled in law, unaided by counsel, and unable to leave the
> prison, his control over the processing of his notice necessarily ceases as
> soon as he hands it over to the only public officials to whom he has
> access—the prison authorities—and the only information he will likely
> have is the date he delivered the notice to those prison authorities and the
> date ultimately stamped on his notice.

*Id.* at 270–72. The Seventh Circuit adopted this same rationale when, in *Censke*, it

applied the prison mailbox rule to administrative tort claims under the FTCA. *See*

*Censke*, 947 F.3d at 489. And it has relied on the same rationale in applying *Houston*

to court filings other than the notice of appeal that was at issue in that case. *See Jones*

*v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999); *see Rutledge v. United States*, 230 F.3d

1041, 1052 (7th Cir. 2000).

     None of this applies to Ms. Chronis. The timing of her submission of her request

for reconsideration was completely under her control; she did not have to rely on

anyone else. And she waited to mail her request for reconsideration until the date it had

to be received by the agency, April 30, 2019, essentially making it impossible for the

claim to be received (as required by the regulation) in a timely fashion. Because the

regulation is clear on its face that *receipt* is required and because the prison mailbox

rule does not apply to Ms. Chronis, her request for reconsideration was not timely and

thus did not toll the running of the six-month deadline for filing suit.[2]

---

[2] Ms. Chronis also cites Illinois law, saying this governs her tort claim, but the FTCA
adopts state *substantive* law, *see, e.g., Buscaglia v. United States*, 25 F.3d 530, 524
(7th Cir. 1999), and the statute of limitations is not a matter of substantive law, nor is the
mailbox rule.

Nor is Ms. Chronis entitled to equitable tolling. That requires a showing that the plaintiff pursued her rights diligently and that some extraordinary circumstance stood in her way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Neither is true here. First, Ms. Chronis did not act diligently but instead waited until the very end of the timeline to mail her request for reconsideration to HHS. Second and perhaps more importantly, there was no "extraordinary [circumstance] beyond [her] control" that prevented her from filing the reconsideration request or this suit in a timely fashion. *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). A simple mistake or misunderstanding regarding the application of the deadlines does not qualify. *See, e.g., Lakin v. Skaletsky*, 327 F. App'x 636, 638 (7th Cir. 2009); *Wilson v. Battles*, 302 F.3d 745, 748 (7th Cir. 2002); *see generally Lawrence v. Florida*, 549 U.S. 327, 337 (2007).

For these reasons, the defendants are entitled to summary judgment on Ms. Chronis's claims.

## 2.     Due process claim

Even were Ms. Chronis's claims not time-barred, her due process claim would fail. Ms. Chronis alleges that HHS and CMS failed to provide her with due process required by 42 U.S.C. § 1983 and the Affordable Care Act. Assuming for purposes of discussion that section 1983 applies, "constitutional tort claims are not cognizable under the FTCA." *Smith v. United States*, 678 F. App'x 403, 406 (7th Cir. 2017); *see FDIC v. Meyer*, 510 U.S. 471, 478 (1994). And she offers no basis to support a contention that the Affordable Care Act would entitle her to relief or that it provides for a private right of action in a situation like this one.

**Conclusion**

For the reasons stated above, this Court grants defendants' motion for summary judgment [dkt. no. 17] and directs the Clerk to enter an order dismissing this case with prejudice.

Date: May 11, 2020

_____

MATTHEW F. KENNELLY
United States District Judge